HERBERT D. KNOX, Petitioner for Mandamus, *vs.* JAMES E. COBURN.

Androscoggin.    Opinion October 31, 1918.

*Mandamus.    R. S., Chap. 51, Sec. 22 interpreted.    General rule covering the rights of stockholders in relation to inspection of the books of a corporation of which he is a stockholder.    Rule as to discretionary right of court to grant inspection.*

This is a petition for writ of mandamus brought by the holder of one share of stock of the Androscoggin Mills against the Clerk of the corporation, to compel him to allow the petitioner to inspect the stock book, to take copies and minutes therefrom of such parts as concern his interests, and to make a list of stockholders, their residence and the amount of stock held by each.    The petitioner is connected with a Boston firm that makes a specialty of dealing with unlisted and inactive stocks and bonds, and it is admitted that the share of stock standing in his name was purchased by this firm in order that the petitioner might have the status of a stockholder, and thereby obtain a list of the stockholders for their exclusive use; that such lists are neither sold nor loaned to brokers nor other dealers but are used as mailing lists in sending out circulars offering to buy or to sell stock in various corporations.    The sitting Justice granted the petition and ordered the peremptory writ of mandamus to issue.

Upon defendant's exceptions it is

*Held:*

1.    Under R. S., Chap. 51, Sec. 22, a stockholder has an absolute and unlimited right to inspect the corporate records and the list of stockholders at all reasonable times, whatever may be his motive in seeking to exercise it.

2.    The stockholders right to take copies and minutes therefrom is limited to such parts as concern his interests and a list of stockholders does concern his interests.

3.    It will not be presumed that the motive of a stockholder is an improper one, and if the motive or purpose is charged to be otherwise the burden is upon the officer refusing the request, or the corporation, to establish it.

4.    The character of the remedy sought by application for a writ of mandamus and the discretion to be exercised by the court in issuing it seems not to have been abridged by the statute and a state of facts might be presented where the purpose of the petitioner was so obviously vexatious, improper or unlawful that the court might feel compelled to exercise its discretion and decline to issue the writ.

5.    The use under the facts in this case is neither improper, vexatious nor unlawful.

Petition for mandamus brought under R. S., Chap. 51, Sec. 22, seeking to permit the plaintiff to inspect the books of the corporation and make copies of the names of stockholders of the Androscoggin Mills, of Lewiston, Maine. After hearing, the presiding Justice ruled in favor of plaintiff; to which ruling defendant filed exceptions. Judgment in accordance with opinion.

Case stated in opinion.

*Ralph W. Crockett,* for petitioner.

*McGillicuddy & Morey,* for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, DUNN, WILSON, JJ.

CORNISH, C. J. This is a petition brought by a stockholder of the Androscoggin Mills, of Lewiston, Maine, for a writ of mandamus commanding the respondent, the clerk of the corporation, to allow him to inspect the stock book, to take copies and minutes therefrom of such parts as concern his interests, and to make a list of the stockholders, their residences and the amount of stock held by each.

The respondent admits the right of the petitioner to inspect the books, but denies him the right to make copies of the books and of the list of stockholders.

R. S., Chap. 51, Sec. 22, provides that the corporate records and stock book "shall be open at all reasonable hours to the inspection of persons interested, who may take copies and minutes therefrom of such parts as concern their interests," etc.

The sitting Justice after full hearing granted the petition and ordered the peremptory writ of mandamus to issue. The case is before the Law Court on defendant's exceptions to this ruling.

The opinion filed by the sitting Justice covers so fully and so discriminatingly the facts and the law involved in this matter that we adopt it as the opinion of the court. That opinion is as follows:

"The petitioner bases his application upon section 22 of chapter 51 of the Revised Statutes, and asks that a peremptory writ issue to the respondent, commanding him to allow the petitioner to inspect the stock book of the Androscoggin Mills and to take copies and minutes therefrom of such parts as concern the petitioner's interests and to make a list of the stockholders of said corporation, their residences and the amount of stock held by each.

In previous decisions of this court (*White* v. *Manter*, 109 Maine, 409; *Withington* v. *Bradley*, 111 Maine, 386; *Eaton* v. *Manter*, 114 Maine, 260), it has been held that this statute, so far as the right of inspection is concerned, adds to the common law rights of a stockholder and removes some of the common law limitations, and that it gives the stockholder an absolute and unlimited right to inspect the corporate records and the list of stockholders whatever may be his motive or purpose in seeking to exercise it, and that it is not necessary to state in his application or prove the reasons for his application to inspect such records. The right to take copies and minutes therefrom, is, however, limited to such parts as concern the interest of the stockholder making the application, and that limitation is recognized by the prayer of the petition in this case. It has further been held that a list of stockholders concerns a stockholder's interest, and that he has a right to take a copy of the list irrespective of his motive or purpose.

The court, however, has been careful to say that the character of the remedy sought by application for a writ of mandamus, and the discretion to be exercised by the court in issuing it, seems not to have been taken away or abridged by the statute, and that a state of facts might be presented where the purpose of the petitioner was so obviously vexatious, improper or unlawful that the court might feel compelled to exercise its discretion and decline to issue the writ.

It will not be presumed that the motive of the stockholder is an improper one, and if the motive or purpose is charged to be otherwise, the burden is upon the officer refusing the request or on the corporation to establish it. *Stone* v. *Kellogg*, 165 Ill. 192, 56 Am. St. Rep., 240; *State* v. *Pacific Brewing Co.* 58 Pacific, 584, 47 L. R. A., 208; *Foster* v. *White*, 86 Ala., 467, 6 So. 88.

The respondent has filed a return to the alternative writ, stating his reasons for not complying with the request of the petitioner. Treating the allegations of this return as statements of fact and not of opinion or belief, the allegations of paragraphs five and seven so far as they relate to the purposes of the petitioner, are not sustained by the evidence. In paragraph six of the return the respondent states his belief "that it is the intention of said Herbert D. Knox to endeavor to use the information for his sole benefit in the buying and selling of the stock of the Androscoggin Mills, and that such act would be detrimental to the best interests of the corporation and its stockholders."

It appears by the evidence before me that the petitioner first made application to the treasurer of the Androscoggin Mills for a list of the stockholders to which Mr. DeNormandie replied, under date of June 22, 1918: "If you will let me know by return mail any specific reason that you may have for desiring this list, I shall be glad to take the matter under consideration." In reply Mr. Knox states: "I beg to advise you that I desire this list for the use only by myself in connection with the firm of Charles A. Day & Company for the purpose of facilitating the purchase or sale of this stock, as by having a list of stockholders when occasion arises can communicate with them direct either as to purchase or sale should I so wish." To this letter Mr. DeNormandie replied: "I have given your letter careful consideration and have been advised that I should not disclose the stockholders' names under the circumstances to which your letter refers. We have always refused such requests and think that we ought not to change our custom."

In his testimony upon examination Mr. Knox testified as follows:

Q. Your purpose in buying a share of stock, as I said before, was for your own private business, to buy and sell to stockholders or anybody else you could get to buy?

A. In connection with the firm of Charles A. Day & Co.

Q. And in selling that stock of course you sell to people other than stockholders, or try to sell it, don't you?

A. Not at all times, no.

Q. You do sometimes?

A. Once in a while. For instance, we may in the Androscoggin, if there should happen to be two or three hundred shares offered for sale, we might circularize it."

It appears from the evidence before me that the petitioner is connected with the firm of Charles A. Day & Co. of Boston, and that that firm makes a specialty of dealing in unlisted and inactive stocks and bonds, and that the share of stock standing in the name of the petitioner was purchased by that firm that Mr. Knox might have the status of a stockholder in the Androscoggin Mills and such rights as attach thereto. It further appears that this firm makes it a practice to obtain lists of stockholders of corporations in the stock of which it deals; that these lists are for its own exclusive use; that they are not sold or even loaned to brokers or other dealers; that they are used as mailing lists in sending out circulars offering to buy or to sell stock in

various corporations. Copies of the circulars issued by this firm were put in evidence, without objection, and seem to be unobjectionable in form. I fail to see wherein the purpose which Mr. Knox intends to make of the lists of stockholders is in any way improper, vexatious or unlawful. In *Withington* v. *Bradley*, supra, the court found that the evidence failed to disclose any unlawful purpose, and that the power of the court to issue the peremptory writ was properly exercised. The report of that case does not show the evidence upon which this finding was based, but as supporting that view the court cited the case of *State* v. *Middlesex Banking Co.*, 87 Conn., 483, a case which is so parallel in its facts with the present case that I quote from the opinion of the court, on page 489:

"The primary charge brought against the relator in the return centers about his business as a stockbroker. It is asserted that he ought not to be admitted to an examination of the stock books because he became a stockholder for the purpose of trading in its shares, and that his controlling purpose in seeking access to the stock books is that he, by means of the information obtained, may more effectually carry on that business and more extensively and successfully buy and sell the company's shares for profit to himself. We fail to discover what harm or loss can threaten either the company or its stockholders from the relator's operations as a buyer and seller of its stock, however active or general they might become, of so gross a character as to call for judicial protection from the exercise of the statutory right. Such operations are not hostile to the corporation, have nothing wrong, unjust, illegitimate or unlawful about them, and the desire to advance them in honorable ways, although ulterior to the interests of the corporation and stock ownership, has no taint of impropriety about it."

In his testimony Mr. Coburn expresses concern that if the writ were granted annoyance to the stockholders might result. It is difficult to see how such a result would follow. The creation of a wider market for the stock cannot certainly be detrimental to the stockholders' interest, and any information as to stock being offered for sale, or of opportunity to sell stock to persons desiring to purchase, would naturally be to the stockholder's interest. The corporation has within its power to very effectually guard the stockholders against any deception, if such should be attempted, by distributing to its stockholders printed statements of its financial condition in such

form as to afford full information. It seems that in the case of this particular corporation it has not been the practice so to do. Referring to a similar claim the court in *State* v. *Middlesex Banking Company*, says:

"But whatever evil incidents might be expected to attend the policy of limited publicity enacted into the law, assuming that the allegations conform to the fact, we must presume that the General Assembly took that into account and weighed that against the anticipated benefits in determining upon it. Whatever possibilities of evil may lie in the policy adopted, they are inherent in the system, and do not arise from exceptional cases of misuse or abuse. If we were to say that the right given by statute should not be enforced for the reason that harmful results might follow, we should be usurping the functions of the legislative department in making practical repeal of the statute and transgressing the comparatively narrow limits of proper judicial action already indicated."

I have carefully examined the cases cited by respondent's counsel in his brief. They do not seem to controvert the positions taken in this opinion, but it may be said of them that such cases arose in states where a more limited policy seems to prevail than prevails in states having statutory provisions similar to those found here.

Peremptory writ of mandamus may issue, commanding the said James E. Coburn to allow the said Herbert D. Knox to inspect the stock book of the Androscoggin Mills and take copies and minutes therefrom of such parts as concern his interests, and to make a list of the stockholders of said corporation, their residences and the amount of stock held by each."

The entry must therefore be,

*Exceptions overruled.*